IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Midland Division

| | |
|---|---|
| **ELLEN Y. FISHER,**<br>**in her individual capacity and**<br>**as Administrator of the Estate of**<br>**Gordon Douglas Fisher, deceased,**<br><br>**and**<br><br>**ADAM DOUGLAS FISHER,**<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**NATIONWIDE CARRIERS, INC.,**<br>**a California stock corporation**<br><br>**SOHAN SINGH,**<br><br>**and**<br><br>**LORETTA POUNCEY BUGGS,**<br>**in her capacity as personal representative**<br>**of the Estate of Herman Buggs, deceased,**<br><br>      **Defendants.** | **COMPLAINT**<br><br>**Case No. 7:13-cv-00046** |

COME NOW Ellen Y. Fisher in her individual capacity and as Administrator of the

Estate of Gordon Douglas Fisher, deceased, and Adam Douglas Fisher, plaintiffs herein, by

counsel, and file this Complaint seeking a judgment under the Texas Wrongful Death Statute

(Tex. Civ. Prac & Rem Code Section 71.000 et seq.) for the wrongful death of Gordon Douglas

Fisher, deceased, against Nationwide Carriers, Inc., Sohan Singh, and Loretta Pouncey Buggs in

her capacity as personal representative of the Estate of Herman Buggs, deceased, defendants

herein, and in support thereof represent unto the Court as follows:

<u>Parties</u>

1.      Ellen Y. Fisher is a resident of the State of Virginia and is the surviving widow of Gordon Douglas Fisher, deceased.

2.      Gordon Douglas Fisher was a resident of the State of Virginia upon his death on March 15, 2012.  Ellen Y. Fisher duly qualified as the Administrator of the Estate of Gordon Douglas Fisher, deceased, on April 20, 2012, in the Amherst County, Virginia Circuit Court.

3.      Adam Douglas Fisher is the son of Gordon Douglas Fisher and is a resident of the State of Virginia.

4.      Ellen Y. Fisher and Adam Douglas Fisher are the sole heirs at law of Gordon Douglas Fisher, and the statutory beneficiaries under both the Virginia and Texas wrongful death statutes.

5.      Plaintiffs are proper parties under the Texas wrongful death statute, Tex. Civ. Prac. & Rem. Code § 71.004(b), to bring this wrongful death action and are the beneficiaries entitled to recover damages under the Texas wrongful death statute, Tex. Civ. Prac. & Rem. Code § 71.004(a).

6.      The defendant Nationwide Carriers, Inc. is a California stock corporation, with its corporate headquarters and primary corporate office located in Bakersfield, California (hereafter "Nationwide").

7.      The defendant Sohan Singh is a resident citizen of California, whose address is believed to be 5513 Rockview Drive, Bakersfield, California 93313 (hereafter "Singh").

8.      The defendant Loretta Pouncey Buggs is being sued in her capacity as the

2

personal representative of her husband, Herman Buggs, who died March 15, 2012, a resident

citizen of the State of Georgia.  Loretta Pouncey Buggs is a resident citizen of Georgia, residing

at 7090 Gip Avenue, Donalsonville, Georgia 39845.  Loretta Pouncey Buggs qualified as the

personal representative of her deceased husband in the State of Georgia.  Loretta Pouncey Buggs,

as personal representative of Herman Buggs, is the appropriate defendant under the Texas

wrongful death statute, Tex. Civ. Prac. & Rem. Code § 71.008(a), against whom to assert

wrongful death claims against Herman Buggs, deceased.

Jurisdiction and Venue

9.      This Court has jurisdiction over the lawsuit based upon diversity of citizenship

under 28 U.S.C. § 1332(a)(1), because all defendants are citizens of foreign states in comparison

to the citizenship of all plaintiffs, and the amount in controversy exceeds $75,000.00, excluding

interest and costs.

10.     The Court also has federal question jurisdiction over the lawsuit under 28 U.S.C.

§ 1331, since some of the claims asserted arise under the laws of the United States, that is, the

Federal Motor Carrier Safety Improvement Act of 1999, to wit, 49 U.S.C. Section 101 et seq.,

and the Federal Regulations promulgated pursuant thereto, being Title 49, Parts 390 through 397

of the United States Code of Federal Regulation (known as the Federal Motor Carrier Safety

Regulations).

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because a substantial

part of the events or omissions giving rise to the claim, namely the motor vehicle wreck forming

the basis of this claim, occurred in this district and within this division.

Facts

12.     The defendant Nationwide Carriers, Inc. is a commercial motor carrier engaged in interstate commerce as defined by 49 U.S.C. Section 13102, operating under authority granted it by the federal government.

13.     The defendant Sohan Singh is believed to be an owner of Nationwide Carriers, Inc. and a corporate officer, and is personally involved in the operation of Nationwide Carriers, Inc., as well as in the operation of his own commercial motor carrier business.

14.     At all times herein concerned, Sohan Singh and Nationwide Carriers, Inc. were joint venturers in the interstate transportation of goods and products for compensation, with each having some measure of control over the venture and jointly sharing in the profits and losses thereof.

15.     Defendant Nationwide Carriers, Inc. was the owner and operator of a 48' 2007 Red Freightliner Tractor, VIN 1FUJBBCK87PU33647 (the "Tractor").

16.     Defendant Sohan Singh was the owner and operator of a 1997 Wabash semi-trailer, VIN 1JJE53254VL392095 (the "Semi-Trailer").

17.     Herman Buggs ("Buggs") was an employee of Nationwide Carriers, Inc. and on March 15, 2012, and at relevant times prior thereto, was employed in an interstate carrier business to operate the Tractor pulling the Semi-Trailer as part of the joint venture between Nationwide Carriers, Inc. and Sohan Singh.

18.     On March 15, 2012, Herman Buggs was a 68 year old man in poor health. Medical records of Herman Buggs indicate Herman Buggs had been admitted on March 8, 2012, to Kingman Regional Medical Center located in Kingman, Arizona, with complaints of fatigue,

4

nausea, vomiting and dizziness.  Mr. Buggs was found to be anemic and suffering from renal failure.  He was treated and given two units of packed red blood cells via transfusion.  He was discharged on March 11, 2011, four days after his admission to the hospital.  Other records indicate Herman Buggs was also a diabetic.

19.     After his March 11, 2012 discharge from the hospital, Nationwide Carriers and Sohan Singh allowed Herman Buggs to continue to operate their commercial motor vehicle and dispatched him to use the Tractor and Semi-Trailer to transport produce from Yuma, Arizona to Bessemer, Alabama.  In connection with that trip Buggs, while operating the Tractor and Semi-Trailer, left Van Horne, Texas at 10:00 a.m. on March 15, 2012, traveling in an easterly direction on Interstate Highway I-10 and then I-20 and arrived at Midland, Texas (a distance of only 185 miles) at approximately 3:00 p.m.  This amounts to an average speed of approximately 37 miles per hour.

20.     On March 15, 2012, at approximately 3:00 p.m., Herman Buggs was traveling eastbound on U.S. Interstate 20, a four-lane divided limited access highway, 0.2 miles west of mile marker 128, just outside the city limited of Midland, Texas, driving the Tractor pulling the Semi-Trailer which was carrying a load in interstate commerce for consideration.

21.     On the same date, time, and place, Gordon Douglas Fisher ("Fisher") was riding in the sleeper compartment of a 2010 Kenworth Model 397 tractor, owned by his employer Englander Transport, Inc., being operated by John Charles Griffin, Jr. ("Griffin"), also employed by Englander Transport, Inc.  The 2010 Kenworth tractor was pulling a loaded 2010 White trailer, also owned by Englander Transport, Inc. (Hereafter the "Englander Transport Tractor Trailer.")

5

22.     On the same date, time and place, Englander Transport Tractor Trailer was headed west on Interstate Highway I-20 traveling at a lawful speed and being operated in a safe and lawful manner by Griffin.

23.     On the same date, time and place, the Tractor owned by Nationwide Carriers, Inc. pulling the Semi-Trailer owned by Sohan Singh, was traveling east on Interstate Highway I-20, being driven by Buggs, at a high rate of speed, when Buggs veered the Tractor and Semi-Trailer sharply left, crossing the median lane between the east and west bound lane.  In the process, the Tractor separated from the Semi-Trailer, and the Tractor, and the then unattached Semi-Trailer continued to proceed across the west bound lane of Interstate I-20 in an easterly direction.  The Tractor, but not the Semi-Trailer, collided head-on with the Englander Transport Tractor Trailer which was traveling in a westerly direction.

24.     The collision resulted in fatal injuries to Fisher, Griffin, and Buggs.

25.     At all times herein concerned, Buggs was the agent, servant and/or employee of defendant Nationwide and Singh, and was acting within the course and scope of such agency, servitude and/or employment, and defendants Nationwide and Singh are therefore vicariously liable for Bugg's negligent and wrongful acts under the doctrine of *respondent superior* and principles of agency law.

FIRST CAUSE OF ACTION

COUNT I

Common Law Negligence

26.     Plaintiffs incorporate by reference the allegations set forth in numbered paragraphs 1-25 into this Count I as if fully stated herein.

6

27.     The death of Gordon Douglas Fisher and the damages sustained by the Plaintiffs herein were the direct and proximate result of the joint and several negligence of Herman Buggs, Nationwide Carriers, Inc., and Sohan Singh.

28.     Herman Buggs, Nationwide Carriers, Inc., and Sohan Singh each had a duty of care to operate, or to see to the operation of, the Tractor and Semi-Trailer in a manner using reasonable care of an ordinary and prudent man, with due regard to the safety of others using the public highways.

29.     Notwithstanding such duty of care, Herman Buggs, Nationwide Carriers, Inc., and Sohan Singh operated the Tractor and Semi-Trailer, or allowed or permitted the Tractor and Semi-Trailer, to be operated in a negligent and grossly negligent manner, in one or more of the following particulars:

(a)     Herman Buggs failed to drive in a single lane and to keep the Tractor and Semi-Trailer in his lane of traffic.

(b)     Herman Buggs failed to take proper evasive action to avoid a collision with the Englander Tractor and Trailer.

(c)     Herman Buggs failed to timely and properly apply his brakes to avoid a collision with the Englander Tractor and Trailer.

(d)     Herman Buggs drove the Tractor and Semi-Trailer in an easterly direction on the westbound lanes of Interstate I-20.

(e)     Herman Buggs otherwise failed to use ordinary care in the operation of the Tractor and Semi-Trailer.

(f)     Herman Buggs operated the Tractor and Semi-Trailer on March 15, 2012,

7

when he was physically and mentally unfit to do so, and Nationwide Carriers, Inc. and Sohan

Singh knew or had reason to know that Herman Buggs was, on March 15, 2012, physically unfit

to operate the Tractor and Semi-Trailer, and nevertheless aided, abetted, encouraged and/or

required Herman Buggs to do so, or alternatively, failed to exercise the ordinary care of an

employer and motor vehicle carrier to ascertain whether or not Herman Buggs was qualified to

operate the Tractor and Semi-Trailer.

      (g)    Nationwide Carriers, Inc. and Sohan Singh had a duty not to hire

unqualified drivers to operate the Tractor and Semi-Trailer, and a duty to train all drivers in the

safe manner to operate the Tractor and Semi-Trailer, and a duty to supervise the driver of the

Tractor and Semi-Trailer.  But Nationwide Carriers, Inc. and Sohan Singh failed in each of these

duties and permitted Herman Buggs to operate the Tractor and Semi-Trailer even though he was

not a qualified driver, was not properly trained, and was not properly supervised.

30.    The separate negligent acts of Herman Buggs, as described above, were taken by

Herman Buggs in his capacity as the agent, servant and/or employee of Nationwide Carriers, Inc.

and of Sohan Singh while acting within the scope of his agency and employment, and as a result

the negligent acts of Herman Buggs are imputed to and constitute negligent acts of Nationwide

Carriers, Inc. and Sohan Singh.

31.    Further, at the time of the wreck, the Tractor and Semi-Trailer were being

operated by Buggs pursuant to certificates of authority issued by the United States Department of

Transportation to defendant Nationwide Carriers, Inc. and Sohan Singh.  Thus, pursuant to

Federal motor carrier statutes (including but not limited to 49 C.F.R. §§ 376.11-376.12, 390.5,

and Tex. Admin. Code §4.11(a)) and common law, Nationwide Carriers, Inc. and Sohan Singh

are absolutely liable for any damages to members of the motoring public resulting from the negligent operation of the Tractor and Semi-Trailer, regardless of whether such damages resulted from any separate negligent act or omission on the part of Nationwide Carriers, Inc. and/or Sohan Singh.

32.     As a direct and proximate cause of the joint and several negligence and gross negligence of Herman Buggs, Nationwide Carriers, Inc., and Sohan Singh, the Tractor being operated by Herman Buggs collided head-on with the Englander Tractor in which Gordon Douglas Fisher was a passenger, proximately causing his death and the resulting injuries to the plaintiffs.

33.     Pursuant to Texas Civ. Prac. & Rem. Code §§ 71.002(a), 71.004 and 71.000, the Estate of Herman Buggs, deceased, is liable for the wrongful acts, neglect, carelessness, unskillfulness and/or default of Herman Buggs that proximately caused the injuries Gordon Douglas Fisher that resulted in his death.  The Estate of Herman Buggs is therefore liable for actual damages suffered by Gordon Douglas Fisher's wrongful death statutory beneficiaries.

34.     Nationwide Carriers, Inc. and Sohan Singh Tractor are also liable to the plaintiffs for damages, under § 7.002(b) of the Tex. Civ. Prac. & Rem. Code., because the wrongful acts: neglect, carelessness, unskillfulness and/or default of Herman Buggs that proximately caused the injuries and the death of Gordon Douglas Fisher, were committed by Herman Buggs while acting as the agent or servant of Nationwide Carriers, Inc. and Sohan Singh.

35.     Pursuant to Tex. Civ. Prac. & Rem. Code § 71.002(c), Nationwide Carriers, Inc., as the owner of the Tractor, being a "vehicle(s) for the transportation of goods or passengers," is liable for the injuries that caused the death of Gordon Douglas Fisher, because the injury was

caused by Nationwide Carrier, Inc.'s own wrongful act, neglect, carelessness, unskillfulness or default and/or the wrongful act, neglect, carelessness, unskillfulness or default of Herman Buggs, its agent or servant.

36.    Pursuant to Tex. Civ. Prac. & Rem. Code § 71.002(c), Sohan Singh, as the owner of the Semi-Trailer, being a "vehicle(s) for the transportation of goods or passengers," is liable for the injuries that caused the death of Gordon Douglas Fisher, because the injury was caused by Sohan Singh's own wrongful act, neglect, carelessness, unskillfulness or default and/or the wrongful act, neglect, carelessness, unskillfulness or default of Herman Buggs, his agent or servant.

37.    Pursuant to Tex. Civ. Prac. & Rem. Code § 71.002(e), Sohan Singh is liable for damages arising from an injury that caused the death of Gordon Douglas Fisher, because (i) Sohan Singh is "a person in charge . . . of the Tractor and Semi-Trailer, being a vehicle for the transportation of goods or passengers" and (ii) the action could have been brought against the owner if the owner had been the Tractor and/or Semi-Trailer's operator.

38.    Pursuant to Tex. Civ. Prac. & Rem. Code § 71.002(e), Nationwide Carriers, Inc. is liable for damages arising from an injury that caused the death of Gordon Douglas Fisher, because (i) Nationwide Carriers, Inc. is "a person in charge . . . of the Tractor and Semi-Trailer, being a vehicle for the transportation of goods or passengers" and (ii) the action could have been brought against the owner if the owner had been the Tractor and/or Semi-Trailer's operator.

## SECOND CAUSE OF ACTION

### COUNT II

### Negligence per se

### Violation of Texas Transportation Code, Rules of Road

39.     Plaintiffs incorporate the allegations in numbered paragraphs 1-38 of this Complaint into this cause of action as if fully stated herein.

40.     Herman Buggs' conduct while driving the Tractor and Semi-Trailer on March 15, 2012, violated the following sections of the Texas Transportation Code - Rules of the Road (Tex. Transp. Code § 545.001 et seq.):

a.     Texas Transp. Code § 545.063 "Driving on a Divided Highway," which requires the operator of a vehicle on a highway having two or more roadways separated by a medial space to operate on the right roadway only, and prohibits the operator of the vehicle from driving across the median barrier except at a designated crossover or intersection.

b.     Texas Transp. Code § 545.103 "Safely Turning," which prohibits a driver from turning either left or right from a direct course, or moving left or right of the roadway, unless the movement can be made safely.

c.     Texas Transp. Code § 545.051 "Driving on Right Side of Roadway" that requires the operator of a vehicle to drive on the right half of the roadway and not into the path of a vehicle being driven lawfully in the opposite direction.

d.     Texas Transportation Code § 545.060 "Driving on Roadway Laned for Traffic," that requires the operator of a vehicle to continue to drive within a single lane of traffic, and not move from the lane unless it can be done safely.

11

41.     The above cited provisions of the Texas Transportation Code were designed to prevent injury to other motorists using the highway, such as Gordon Douglas Fisher.

42.     The unexcused violation of the above cited provisions of the Texas Transportation Code by Herman Buggs was a direct and proximate cause of the resulting wreck which killed Gordon Douglas Fisher.  Thus, Buggs, Nationwide Carriers, Inc., and Sohan Singh are guilty of negligence per se that proximately caused the death of Gordon Douglas Fisher.

## THIRD CAUSE OF ACTION

### Negligence Per Se

Violation of Federal Motor Carrier Safety Improvement Act
of 1999 and Federal Motor Carrier Safety Act Regulation

43.     Plaintiffs incorporate the allegations in numbered paragraphs 1-42 into this cause of action as if fully stated herein.

44.     The Federal Motor Carrier Safety Improvement Act of 1999 (see 49 U.S.C. § 101 et seq. and 49 U.S.C. § 31305 et al.) (the "Act") regulates interstate trucking carriers and drivers and authorized the adoption of Federal Motor Carrier Safety Act Regulations at 49 C.F.R., Part 390 "Federal Motor Carrier Safety Regulations; General" (49 C.F.R. § 390.1 et seq.), Part 391 "Qualifications of Drivers and Longer Combination Vehicles (LCV) Driver Instructions" (49 C.F.R. 391.1 et seq.) Part 392 "Driving of Commercial Motor Vehicles" (49 C.F.R. 392.1 et seq.) (the "Regulations").

45.     The Tractor is a "Commercial Motor Vehicle" as the term is defined in 49 C.F.R. §390.5 because the Tractor is a "self-propelled vehicle used on a highway in interstate commerce to transport property when the vehicle has a gross weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight of 4536 Kg (10,001 pounds) or more,

whichever is greater," and the Semi-Trailer is a "Commercial Motor Vehicle" as the term is defined in 49 C.F.R. § 390.5 because the Semi-Trailer is a "towed motor vehicle used on a highway in interstate commerce to transport . . . property when the vehicle has a gross weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight of 4536 Kg (10,001 pounds) or more, whichever is greater."

46.     Sohan Singh is an "employer" as the term is defined in 49 C.F.R. § 390.5 because Sohan Singh is a "person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business . . ."

47.     As an "employer", Sohan Singh is also automatically a "motor vehicle carrier" for the purposes of subpart B of the Federal Motor Carrier Safety Regulation (i.e. 49 C.F.R. §§ 390.9 to 390.37) as the term "motor vehicle carrier" is defined in 49 C.F.R. 390.5.

48.     Sohan Singh is also a "motor vehicle carrier" as the term is defined in 49 C.F.R. 390.5 because Sohan Singh is the agent, officer and representative and/or an employee of Nationwide Carriers, Inc., which is also a "motor vehicle carrier," and because Sohan Singh was responsible for hiring, supervising, training, assigning or dispatching drivers of Nationwide Carriers, Inc., a "motor vehicle carrier."

49.     49 C.F.R. 390.11 states that whenever "a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition."  Further, 49 C.F.R. 392.1 makes clear that "each motor carrier, its officers, agents, representatives and employees responsible for the management, maintenance, operation or driving of a commercial motor vehicle, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in, and comply with the rules in

13

this part." Further, 49 C.F.R. § 392.2 provides "every commercial motor vehicle must be operated in accordance with the laws, ordinances and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than the law, ordinance or regulation, the Federal Motor Carrier Safety Administration Regulations must be complied with."

50.     Thus, Nationwide Carriers, Inc. had a duty to require Buggs, who was driving the Tractor owned by Nationwide Carriers, to observe all duties or prohibitions imposed upon Buggs by the Federal Motor Safety Act regulations and when driving in Texas, imposed upon Buggs by applicable Texas traffic and motor vehicle laws.

51.     Thus, Sohan Singh also had a duty to require Buggs, as both an employee driver of Nationwide Carriers, Inc. and as the driver of a Tractor towing the Semi-Trailer owned by Sohan Singh, to observe all duties or prohibitions imposed upon Buggs by the Federal Motor Safety Act regulations and imposed upon Buggs, when driving in Texas by all applicable Texas traffic and motor vehicle laws.

52.     The Act and the Regulations require a driver of a commercial motor vehicle to obey the applicable state traffic laws and rules of the road applicable to the highways of the state where the driver is operating a commercial motor vehicle. For the reasons hereinbefore set forth in Counts I and II, Buggs failed to do so.

53.     49 C.F.R. 390.13 provides that "no person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

54.     49 C.F.R. 391.1 et seq. sets out the minimum qualification for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers. These rules also establish the

minimum duties of motor vehicle carriers with respect to the qualifications of their drivers.

55.      49 C.F.R. Section 391.11 sets out the "General qualifications of drivers."
Subsection (a) provides that a "person shall not drive a commercial motor vehicle unless he/she
is qualified to drive a commercial motor vehicle.  Subsection (b)(4) requires that the driver:

> "(4) is physically qualified to drive a commercial motor vehicle in
> accordance with subpart E - Physical Qualification and
> Examination of this part."

56.      Subpart E is found in 49 C.F.R. 391.41 to 391.49.  Section 391.41(a)(1)(i)
provides in part that "a person subject to this part must not operate a commercial motor vehicle
unless he or she is medically certified as physically qualified to do so. . ."

57.      Among other medical conditions that disqualify a driver, Section
391.41(a)(3)(i)(3) disqualifies a driver with a diagnosis of diabetes mellitus currently requiring
insulin for control; Section 391.4(a)(3)(i)(6) disqualifies a driver with high blood pressure likely
to interfere with his or her ability to operate a commercial motor vehicle safely and Section
391.4(a)(3)(i)(9) disqualifies a driver with any organic or functional disease or disorder likely to
interfere with his/her ability to drive a commercial and/or vehicle safely.

58.      49 C.F.R. 391.45 sets out when a driver must be medically examined and
certified.  In addition to the initial physical examination and certification, a driver has to be re-
examined and re-certified every 24 months.  Further, 49 C.F.R. 391.45(c) requires re-
examination and re-certification whenever:

> "(c)      Any driver whose ability to perform his/her normal duties
> has been impaired by a physical or mental injury or disease."

59.      The United States Department of Transportation, Federal Motor Carrier Safety
Administration has issued an official Guidance for 49 C.F.R. 391.45 that clearly states that

whenever a driver is returning to work from an injury or illness, the motor carrier has "the obligation to determine if an injury or illness renders the driver medically unqualified." See Federal Motor Carrier Safety Administrator interpretation for 391.45, Question 3, Guidance.

60.     Buggs was reported to be a diabetic and was otherwise in ill health and for some time prior to the March 15, 2012 wreck, was not physically qualified to drive a commercial motor vehicle.

61.     On March 8, 2012, Buggs suffered a significant medical event which resulted in his hospitalization in Kingman Regional Medical Center in Kingman, Arizona.  It has been reported that Buggs complained of fatigue, nausea, vomiting and dizziness.  Buggs was found to be suffering from a serious medical condition including anemia and renal failure.  During his hospitalization it was reported he was given two units of packed red blood cells via transfusion and was not discharged until March 11, 2012.

62.     Buggs' March 8-11, 2012 hospitalization constituted an event covered by 49 C.F.R. § 391.45(c), since his ability to perform his normal duties as a driver had been impaired by a physical or mental injury or disease.  Such an event disqualified him from operating a commercial motor vehicle until he was re-examined and re-certified in the manner set forth in 49 C.F.R. § 391.41.

63.     Nationwide Carriers, Inc. and Sohan Sighn had actual knowledge that Buggs was unqualified to operate the Tractor and Semi-Trailer on March 11, 2012 and thereafter, or alternatively they utterly failed to conduct a proper investigation to determine whether or not Buggs required a new medical examination before being allowed to operate the Tractor and Semi-Trailer.  If a proper investigation had been made by Nationwide Carriers, Inc. and Sohan

Singh, each would have determined that Buggs needed to be re-certified and was not lawfully

able to operate the Tractor and Semi-Trailer after March 11, 2012.

64.     Buggs was not re-examined and re-certified as required by 49 C.F.R. § 391.41

after his March 8-11, 2012 illness and hospitalization, and thus was not a qualified person to

operate a commercial motor vehicle pursuant to 49 C.F.R. 391.1 et seq. on March 15, 2012 when

the wreck occurred.

65.     49 C.F.R. 392.3 "Ill or fatigued operation," provides that: "No driver shall operate

a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a

commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to

become impaired, through fatigue, illness or any other cause, as to make it unsafe for him/her to

begin or to continue to operate the commercial motor vehicle . . ."

66.     Buggs was not a qualified driver to operate a commercial motor vehicle on March

15, 2012. He could not do so safely. Buggs' operation of the Tractor and Semi-Trailer on March

15, 2012 was in violation of the Federal Motor Carrier Improvement Act of 1999 and the

regulations promulgated pursuant thereto, and created a safety risk to others using the public

highways.

67.     Nationwide Carriers, Inc. and Sohan Singh knew or had reason to know that

Buggs was not a qualified person to operate a commercial motor vehicle and allowing him to

operate the Tractor and Semi-Trailer created a safety risk to others using the highways, but

Nationwide Carriers, Inc. and Sohan Singh nevertheless aided, abetted, encouraged or required

Buggs to operate the Tractor and Semi-Trailer, including on March 15, 2012.

68.     The Federal Motor Carrier Safety Improvement Act of 1999 and the above Motor

17

Carrier Safety Regulations were designed to prevent to prevent injury to other motorists using the highways such as Gordon Douglas Fisher.

69.     The unexcused violation of the above cited provisions of the Federal Motor Carrier Safety Improvement Act of 1999 and the Motor Carrier Safety Regulations by Herman Buggs, Nationwide Carriers, Inc. and Sohan Singh was a direct and proximate cause of the resulting wreck which killed Gordon Douglas Fisher.  Thus, Buggs, Nationwide Carriers, Inc., and Sohan Singh are guilty of the negligence per se that proximately caused the death of Gordon Douglas Fisher.

70.     The actions of Nationwide Carriers, Inc. and Sohan Singh constitute wilful negligence, and demonstrate a conscious disregard for the safety of others using the highway and provide an independent basis for awarding exemplary and punitive damages against them.

DAMAGES AND RELIEF REQUESTED

71.     As a direct and proximate result of the death of Gordon Douglas Fisher, the plaintiff, Ellen Y. Fisher, widow of Gordon Douglas Fisher, in her individual capacity suffered damages recoverable under the Texas wrongful death statute, including but not limited to, damages for solace and pain and suffering for the loss of her husband, loss of society and companionship of her husband, loss of consortium of her husband, loss of earnings and support and pecuniary loss, additional pecuniary damages in the form of loss of future advice and counsel and other services that would have been provided to her by her husband; together with any and all other damages which Ellen Y. Fisher may show that she is entitled to recover under the Texas wrongful death statute, Tex. Civ. Prac. & Rem. Code § 71.002.

72.     As a direct and proximate result of the death of Gordon Douglas Fisher, the

plaintiff Adam Douglas Fisher, the son of Gordon Douglas Fisher, suffered damages recoverable under the Texas wrongful death statute, including but not limited to, damages for solace and emotional distress from the death of his father, loss of the society and companionship of his father, loss of earnings and support and pecuniary loss, additional pecuniary damages in the form of loss of loss of future advice and counsel and other services that would have been provided to him by his father, together with any and all other damages which Adam Douglas Fisher may show that he is entitled to recover under the Texas wrongful death statute, Tex. Civ. Prac. & Rem. Code § 71.002.

73.     Ellen Y. Fisher, in her capacity as Administrator of the Estate of Gordon Douglas Fisher, deceased, also seeks to recover the damages to the Estate, including funeral and burial expenses, and all other damages to which Gordon Douglas Fisher may be entitled to under the Texas law pursuant to Tex. Civ. Prac. & Rem. Code § 71.021.

74.     The wrongful acts of the defendants constitute gross negligence and demonstrated intentional and wilful conduct manifesting a blatant disregard for the safety of others using the highways. Therefore, plaintiffs in addition to compensatory damages, are entitled to recover exemplary and punitive damages against the defendants Nationwide Carriers, Inc. and Sohan Singh.

75.     Plaintiffs seek to recover all damages they may show themselves justly entitled under Texas law, both actual and exemplary, jointly and severally, independently and collectively.

76.     Plaintiffs do further sue for prejudgment interest in accordance with Tex. Rev. Civ. Stat. Ann. 5069-1.05, and other applicable law, together with post judgment interest, and

their costs.

WHEREFORE, PREMISES CONSIDERED, plaintiffs pray that defendants be cited to appear and answer herein, that upon final trial they recover all damages, cost of court, prejudgment interest and post judgment interest and for such other and further relief, general or special, to which plaintiffs may be entitled.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.

**ELLEN Y. FISHER in her individual capacity and as Administrator of the Estate of Gordon Douglas Fisher, deceased**

**ADAM DOUGLAS FISHER**

By: _____

for B. Kent Buckingham
Of Counsel

B. Kent Buckingham
(Texas State Bar # 03298220)
Richard Barrera, Jr.
(Texas State Bar # 24068272)
BUCKINGHAM BARRERA, PLLC
1707 W. Wall Street
Midland, TX 79701-6529
Telephone:     (432) 570-1919
Telecopier:    (432) 570-1981
Buckinghamlawfirm@hotmail.com

Richard E. Spies (VSB #13498)
James G. Hunter, III (VSB #26498)
O'Keeffe & Spies
828 Main Street, Suite 1803
P. O. Box 1419
Lynchburg, VA 24505
Telephone:     (434) 845-6555
Telecopier:     (434) 845-4267
Rspies@okeeffe-spies.com
Jhunter@okeeffe-spies.com

C:\Users\Rick\AppData\Local\Temp\lmt03743.wpd